1

2

3

4

5

6                    **IN THE UNITED STATES DISTRICT COURT**

7              **FOR THE EASTERN DISTRICT OF CALIFORNIA**

8

9    **UNITED STATES OF AMERICA,**            **1:99-cr-05060-AWI**

10                    **Respondent,**          **ORDER DENYING PETITIONER'S**
                                               **SECOND OR SUCCESSIVE MOTION**
11                    **vs.**                  **TO VACATE, CORRECT OR SET**
                                               **ASIDE HIS CONVICTION PURSUANT**
12   **RAFAEL QUIROZ-MONTEJANO,**             **TO 28 U.S.C. § 2255**

13                                             **Doc. 413**
                     **Petitioner.**
14

15

16          On February 28, 2013, the Ninth Circuit Court of Appeals issued an order granting the

17   request of petitioner Rafael Quiroz-Montejano ("Petitioner") to file a second or successive

18   petition pursuant to 28 U.S.C. § 2255 in the above-captioned case.  On March 6, 2013, Petitioner

19   filed the instant petition to vacate his sentence pursuant subsection 2255(h)(hereinafter, the

20   "March 6 Motion").  On April 9, 2014, this court directed respondent United States

21   ("Respondent") to indicate their intention to oppose or not oppose Petitioner's March 6 Motion.

22   Respondent filed an informational document on April 14, 2014, indicating an intention to file an

23   opposition.  Respondent filed its opposition on May 29, 2014.  Petitioner's response to

24   Respondent's opposition was filed on May 30, 2014.

25

26              **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

27          On August 8, 2000, Petitioner was found guilty following a jury trial to one count of

28   continuing criminal enterprise in violation of 21 U.S.C. §848, one count of violation of 21

U.S.C. § 841(a)(1), conspiracy to manufacture and distribute methamphetamine, and 9 counts of

manufacturing methamphetamine and aiding and abetting in violation of 21 U.S.C. § 841(a)(1)

and 18 U.S.C. § 2.  Petitioner was committed to a term of life imprisonment.  Judgment was

entered on July 5, 2001.  Petitioner timely filed a notice of appeal on issues of sufficiency of

evidence and on the issue of failure to declare mistrial following government's alleged vouching

for a witness.  Petitioner's appeal was denied and his conviction became final following denial

of writ of certiorari by the Supreme Court.  Quiroz v. United States, 540 U.S. 850, 124 S.Ct. 130

(Mem) (2003).  Petitioner timely filed his first petition pursuant to 28 U.S.C. § 2255 on October

5, 2004 (hereinafter, Petitioner's "first 2255 Motion").  The primary claim raised in Petitioner's

first 2255 Motion was a claim for ineffective assistance of counsel based on the failure of

counsel[1] to adequately represent the government's offer of plea agreement to Petitioner causing

Petitioner to reject the offer and stand trial resulting in a harsher sentence.  Petitioner's first 2255

Motion was denied on May 26, 2005.  Doc. # 388.  A certificate of appealability was denied.

The court notes that in his March 6 Motion, Petitioner raises an ineffective assistance of counsel

claim that alleges the same factual background as Petitioner's first 2255 Motion.

Both parties present extensive factual backgrounds pertaining to issues raised and

evidence presented at Petitioner's trial.  That material will not be repeated here.  For purposes of

this discussion, the court notes that evidence was presented at trial that Petitioner's brother,

Roberto Montejano-Quiroz ("Roberto") used Petitioner's identity at various times to carry out

certain transactions in furtherance of the alleged ongoing conspiracy and methamphetamine

manufacturing activities.  Roberto had been arrested in Santa Clara County on charges related to

---

[1]   There were three attorneys involved in Petitioner's defense leading up to trial; Hector Padilla,
Richard Bitters and William Romaine.  Petitioner's claim of ineffective assistance of counsel related to
the alleged collective failure of the three attorneys to adequately represent a limited-time plea offer
extended by the government a few days before trial and rejected by Petitioner.

methamphetamine production and sale prior to the time the federal case was instituted. It appears to be undisputed that Roberto skipped bail on the state charges, and used Petitioner's identity in furtherance of methamphetamine-related illegal activities , some of which were related to the ongoing conspiracy that Petitioner was convicted of. Apparently Roberto fled to Mexico prior to the institution of the federal prosecution that resulted in Petitioner's conviction. The court also notes that substantial amount of the evidence relied upon to obtain Petitioner's conviction was provided by a co-defendant, Ernesto Plancarte ("Plancarte"), who testified extensively at Petitioner's trial that he was Petitioner's lieutenant or right hand man and that Petitioner had a leadership role in methamphetamine production and distribution in a number of scattered laboratories in California.

Petitioner alleges that on or about September 8, 2011, about ten years after Petitioner was incarcerated in the instant case, Petitioner was contacted through his attorney by Roberto, who was then living in Mexico. Petitioner's attorney arranged a meeting with Roberto in Guadalajara, Mexico where Roberto provided him a declaration and other documents to show that Roberto had assumed Petitioner's identity and used it while committing acts for which Petitioner was charged and convicted. An English translation of Roberto's declaration is available at Docket Number 413-3. In addition, Petitioner's March 6 motion attaches the declarations of two persons who appear to have been workers on Petitioner's cattle ranch in Mexico attesting that Petitioner resided in Mexico at the ranch except for brief visits to the United States during the time of the criminal conduct of which Petitioner was convicted. Doc. # 413-9. An English translation of this document has not been provided.

## LEGAL STANDARD

Because the consideration of a second or successive petition pursuant to section 2255 has been an uncommon occurrence in this court and because the court finds that it previously made

comments reflecting an incomplete understanding of the legal barriers to second or successive habeas review, the court concludes it should begin by correcting its prior misstatements by stating anew the legal standard as it pertains to this court's determination of Petitioner's March 6 Motion.  The prior statement of this court that is in need of correction relates to the relationship between the appellate court's standard for the granting of permission to file a second or successive petition and the district court's review of the petition once it is submitted. To the extent that this court's order of April 9, 2014, suggested that the appellate court's grant of permission to file a second or successive habeas petition is in any way dispositive or indicative of the legal or factual sufficiency of the merits of the petitioner's second or successive pleading, such suggestion was erroneous.  Pursuant to 28 U.S.C. § 1144(b)(3)(C) "the court of appeals may authorize the filing of a second or successive application only if it determines that the application makes a *prima facie* showing that the applications satisfies the requirements of this subsection."  Id. (italics added).  "Before filing a successive petition in the district court, 28 U.S.C. § 2244(b)(3) requites a[a petitioner] to make a 'prima facie showing' to [the appellate court] that his petition would satisfy section 2244(b)(2)."  Woratzeck v. Stewart, 118 F.3d684, 650 (9th Cir 1997).  A "prima facie showing" at the appellate court level is "a sufficient showing of *possible* merit to warrant a fuller exploration by the district court."  Cooper v. Woodford, 358 F.3d 1117, 1119 (9th Cir. 2004) (italics added).

In contrast, subsection 2244(b)(4) provides that "a *district court* shall dismiss any claim presented in a second or successive application that the court of appeals has authorized to be filed unless the applications shows that the claim satisfies the requirements of this section."  Id. The term "satisfies the requirements of this section" refers to the incorporation of the procedures for the filing of a second or successive habeas petition pursuant to 28 U.S.C. § 2244 into section 2255.  Thus, to "satisfy the requirements of *this* section" pursuant to  section 2244 as incorporated into section 2255(h), a Petitioner is required to plead facts that show *either*:

> "(1) newly discovered evidence that, if proven and viewed in light *of the evidence as a whole*, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense; *or* (2) a new rule of constitutional law, made

-4-

1

2

retroactive to cases on collateral review ty the Supreme Court, that was
previously unavailable."

3

United States v. Villa-Gonzalez, 208 F.3d 1160, 1164 (9th Cir. 2000) (quoting 28 U.S.C. § 2255)

4

(italics added)[2].

5

"Although [section 2244(b)(4)] does not explain the nature of this showing, we conclude

6

that the prisoner must make more than another prima facie showing.  [. . . .]  [¶]  We conclude,

7

therefore, that under section 2244(b)(4), a district court must conduct a thorough review of all

8

allegations and evidence presented by the prisoner to determine whether the motion meets the

9

statutory requirements for the filing of a second or successive motion. As with the district court's

10

denial of a first section 2255 motion, summary denial of the motion is proper when the motion

11

12

and the files and records of the case conclusively show that the prisoner's motion does not meet

13

the second or successive motion requirements."  Id. at 1165.  To put it more concretely, the

14

district court must determine that the petitioner's proffered new evidence, considered in the

15

context of all the available evidence, including evidence adduced at trial, is sufficient to show

16

that no reasonable factfinder would have found the petitioner guilty of the conviction being

17

challenged.

18

**DISCUSSION**

19

**I. Procedural Default – Interpreting Petitioner's March 6 Motion**

20

21

Petitioner's March 6 Motion alleges two legal bases for relief; actual innocence and

22

ineffective assistance of counsel.  The first basis – actual innocence -- is alleged in the March 6

23

Motion for the first time; the claim for ineffective assistance of counsel was raised in Petitioner's

24

first 2255 Motion.  Section 2255 distinguishes categories of petitions that are normally excluded

25

26

27

28

---

[2]    See also, id. at 1164 n.4 (explaining that "in the context of a section 2255 motion, the phrase 'the
requirements of this section' in section 2244(b)(4) refers to the requirements set out in section 2255, not
section 2244(b)(2)."

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

from a district court's jurisdiction.  In particular, petitions that are filed more than one year from

the date the conviction became final are prohibited except as they may fall under one of the

exceptions provided in subsection 2255(f) and petitions that are submitted to the district court for

the second or successive time are barred except that they meet the qualifying standards of

subsection 2255(h).  The distinction between habeas petitions that are procedurally defaulted due

to being time-barred and those that are procedurally defaulted due to being second or successive

is important inasmuch as the stringency of the bar applied is different in each case.  See Lee v.

Lampert, 653 F.3d 929, 936-937 (9th Cir. 2011) (noting that "AEDPA contains a more exacting

actual innocence exception for successive petitions and evidentiary hearings" than for petitions

that are filed out of time).

A habeas petition that is numerically second or successive is not necessarily "second or

successive" within the meaning of subsection 2255(h).  See Cooper v. Calderon, 308 F.3d 1020,

1023 (9th Cir 2002) (noting that not all not all numerically successive petitions are subject to the

strict limitations imposed by subsection 2255(h)).  A petition is "second or successive" within

the meaning of subsection 2255(h) only if its claims were (1) raised in a prior petition and

determined on their merits, or (2) if the claims were not raised in a prior petition and the

petitioner's failure to assert the claims earlier constitute an abuse of the writ.  Id. at 1023.  In the

case at bar, the court has examined the order denying Petitioner's first 2255 Motion and, as

previously noted, concludes that Petitioner's first Motion was fully addressed on its merits and

that the claims asserted therein are essentially identical to the claims asserted with respect to

ineffective assistance of counsel in Petitioner's March 6 Motion.  The court therefore concludes

that Petitioner's March 6 Motion asserts a claim for ineffective assistance of counsel that is

"second or successive" within the meaning of section 2255(h).

As previously noted, subsection 2255(h) provides that a second or successive habeas

petition "must be certified as provided in section 2244 by a panel of the appropriate court of appeals to contain : (1) newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish *by clear and convincing evidence* that no reasonable factfinder would have found the movant guilty of the offense; or (2) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." Id. (italics added).

It appears to this court there is some confusion in terminology regarding the prerequisite conditions to establish the court's jurisdiction over a second or successive habeas petition. Respondents characterize the establishment of innocence by clear and convincing evidence to be a "gateway" (or perhaps *the* gateway) through which a petitioner must pass in order to present other claims of constitutional error that have been procedurally defaulted. It is this court's opinion that the term "gateway" is unhelpful in the context of second or successive habeas petition. The court has examined cases using this terminology and it appears that the term has its origin in the case of Schlup v. Delo, 513 U.S. 298 (1995), where the Supreme Court considered the petitioner's claim of actual innocence in order to show "'cause and prejudice' sufficient to excuse his failure to present his evidence in support of his first federal petition." Id. at 314. The Court observed that "Schlup's claim of innocence is thus 'not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits.'" Id. at 315 (quoting Herrera v. Collins, 506 U.S. 390, 404 (1933)).

"Before AEDPA was enacted in 1996, 'a complex and evolving body of equitable principles informed and controlled by historical usage, statutory developments, and judicial decisions' known as the abuse-of-the-writ doctrine guided federal courts in their consideration of second or successive habeas corpus petitions." Jones v. Ryan, 733 F.3d 825, 841 (9th Cir. 2013)

1   (quoting <u>McCleskey v. Zant</u>, 499 U.S. 467, 489 (1991)).  It appears to the court that one result of

2   enactment of the ADEPA is to codify (and consequently to limit) the equitable considerations

3   applicable to second or successive habeas petitions.  In light of the specification of two and only

4   two bases for the consideration of a second or successive habeas petition pursuant to section

5   2255(h), it appears to this court that it is the intention of Congress that habeas relief is available

6   from a second or successive petition only where the petitioner can show by clear and convincing

7   evidence that he is innocent or that a new law that was not available at the time of his conviction

8   provides a defense or rule that would clearly alter the outcome of the prior proceeding that

9   resulted in conviction.  If either condition is fulfilled, it follows that the petitioner is entitled to

10  relief in the form of either exoneration or a new trial.  The idea of gateway does not apply

11  because any alleged other constitutional flaws in the first proceeding become moot.  In holding

12  that the idea of "gateway" does not apply for petitions filed after the enactment of ADEPA, the

13  court avoids the logical clumsiness of having to rule that the petitioner has provided evidence

14  that he is innocent by clear and convincing evidence before it can consider an alleged

15  constitutional error of perhaps lesser importance.  The court will therefore proceed to consider in

16  order whether Petitioner has successfully alleged new facts to show his innocence or the

17  violation of a new constitutional rule made applicable retroactively.

18  **II.  Petitioner's Claim of Actual Innocence**

19       Petitioner's claim of actual innocence is based on two items of "new" evidence.  The first

20  is the declaration of Roberto Quiroz ("Roberto's Declaration"), the English translation of which

21  is available at Document Number 413-3.  The second item is the aforementioned declaration of

22  employees working at Petitioner's cattle ranch in Mexico during the time relevant to the charges

23  in this case.  The court also notes that the declaration of Petitioner's appellate attorney, Jeffrey

24  Schwartz (the "Schwartz Declaration"), contains allegations that he was contacted at an

unspecified time by a relative of Ernesto Plancarte.  Doc. # 413-5.  The Schwartz Declaration

acknowledges that Plancarte provide substantial evidence at trial implicating Petitioner as the

"kingpin" of the continuing conspiracy.  In return for his testimony, Plancarte received a

significant downward departure at sentencing and was sentenced to a term of ten years which has

been completed.  Schwartz's declaration explains as "background information" that Plancarte's

relative relayed information indicating that Plancarte's testimony was the result of pressure

applied by the government and that the testimony falsely identified Petitioner, rather than

Roberto as the "kingpin."  See Doc. # 413-5 at ¶¶ 6-8.

     While Roberto's Declaration is "new evidence" in the strict sense, the issue of Roberto's

use of Petitioner's identity documents to obtain legal residency documentation and a California

Driver's License is not.  It is important to note that although Roberto used Petitioner's Mexican

military identification card to obtain false identification documents, there is no allegation that

Roberto used any identification documents that actually belonged to Petitioner in connection

with any transactions that were used as evidence of the criminal conspiracy.  Nor is there any

allegation that Roberto was ever in possession of any document belonging to Petitioner except

for the military identification card.  As Respondents point out, the government was well aware

that there were two sets of documents identifying "Rafael Quiroz" that were used in transactions

related to the criminal conspiracy.  The government was also aware, and Petitioner admits, that

the two sets of documents were easily distinguishable based on the photograph and physical

description.  As a result, the trial record, as cited by Respondents, is replete with instances

where careful distinctions were made during testimony with regard to which sets of

identification were used to carry out which transactions.  Respondent also cites to portions of the

trial record that show that witnesses were called to make in-court identification of Petitioner

where there was dispute as to which of the identification documents were used.

1

2
        Roberto's Declaration is somewhat vague as to the means by which Roberto assumed

3
Petitioner's identity.  The Declaration states that Petitioner returned to Colima, Mexico in "1995

4
or 1996."  Doc. # 413-3 at ¶ 7.  Roberto alleges that Roberto was arrested in Santa Clara County

5
in 1996 on charges pertaining to methamphetamine sales, bailed out of jail and fled to Colima,

6
Mexico, where his brother was allegedly residing on his cattle ranch.  Roberto alleges he

7
obtained his brother's military service card which he used to apply for a permanent residence

8
card from the Department of Justice and received a I-551 temporary visa.  Using the temporary

9
visa, Roberto applied for a "green card" and obtained a short-term passport from the Mexican

10
Consulate in Los Angeles.  Thus, Roberto's Declaration suggests that the only document taken

11
from Petitioner was his military service card and that all false documents of identification that

12
were actually used by Roberto were issued directly or indirectly from that military service card.

13
        After explaining how the false identification documents were obtained, Roberto's

14

15
Declaration asserts in summary fashion that, using his false identity documents, Roberto

16
purchased a White Dodge Van from Mr. Pulido, made wire transfers, leased real properties,

17
some of which were used for methamphetamine manufacture, and laundered money through

18
gaming casinos.  See Doc. # 413-3 at ¶¶ 11-12.  With regard to Petitioner's activities, Roberto's

19
declaration states only in summary fashion that:

20

21
> While impersonating my brother I was engaged still engaged [sic] with
> unlawful meth manufacturing and distributing with Ernesto Plancarte.  My

22
> brother Rafael had no knowledge of my having stolen his identity because
> from 1996 until my brother came back from Mexico to collect his lottery

23
> winning in 1998, when he was arrested he was living in Colima, Mexico,
> on the cattle ranch he purchased with his lotto winnings.  ¶ My brother

24
> was not a meth dealer and manufacturer.  I was the criminal, not he.
> Rafael always stayed out of my business and the illegal trafficking

25
> business because he did not have the need to make money.  He was
> independently wealthy because of his lottery monies and other lawful

26
> business investments including his Menlo Park restaurant.

27
Doc. # 413-3 at ¶¶12-13.

28

-10-

1

2      As noted above, the newly discovered evidence must be assessed "in light of the

3  evidence as a whole." That means "the court must assess the probative force of the newly

4  presented evidence in connection with the evidence of guilt adduced at trial." Schlup, 513 U.S.

5  at 332. Thus, probative value of Roberto's Declaration is to be assessed in consideration of,

6  *inter alia*, the extent to which the facts alleged comport or conflict with competent facts adduced

7  at trial and the extent to which the *facts* alleged in the Declaration, if taken as true, would

8  foreclose the possibility of a guilty verdict. In addition, a court may also "consider how the

9  timing of the submission and the likely credibility of the [declarant] bear[s] on the probable

10 reliability of that evidence." Id. It bears noting that the obligation of the court to critically

11 assess the probative force of the new evidence is what distinguishes the role of the appellate

12 court in determining if the Petitioner has stated a *prima facie* case for relief and the district

13 court's role in determining whether the pleading satisfies the requirements of section 2255(h)

14

15 and section 2244.

16      Two considerations significantly undercut the probative value of Roberto's Declaration

17 and the declaration of the ranch hands in Mexico. First, Roberto's Declaration is weakened by

18 its assertion that Petitioner remained in Mexico continuously from 1989 when he won 1 million

19 dollars in the lottery and his arrest in 1998 when he reentered California to collect a lottery

20 payout. Not only did Petitioner admit at trial that he spent months in the United States each

21 year, but Roberto's allegation that Petitioner was absent does not explain the use of Petitioner's

22 actual (as opposed to Roberto's forged) identification documents with regard to a number of

23 transactions that have connections to the ongoing conspiracy. Second, the Roberto's allegation

24 that his brother was innocent of any crimes is undercut by the extensive testimony of Plancarte at

25 trial. While the court recognizes that Petitioner has asserted that there have been indirect

26 communications with Placarte through unidentified relatives to the effect that Plancarte was not

27

28

-11-

truthful at trial, no competent evidence in support of that statement has been offered.  Further,

Petitioner's explanation that Plancarte is unwilling to make his whereabouts known or to make

any formal sworn statement because of the possibility of retribution makes little sense.  Plancarte

has served his sentence and the production of statements that he testified falsely under

governmental pressure would, if anything, reduce the risk of retaliation against him by

Petitioner's family.  For these reasons, the court cannot grant any weight to information

suggesting that Plancarte's testimony at trial was anything less than truthful.

Finally, the consideration of the timing of the submission of Roberto's Declaration

undercuts its reliability.  The statute of limitations concerning the offences that were charged

against Petitioner and his codefendants had run by 2005 at the latest.  Assuming that Roberto

fled to Mexico with the intention of not returning to the United States and was as guilt-ridden as

the Declaration suggests, he had no discernable reason to delay admitting his responsibility for

the crimes for which Petitioner was convicted as of at least ten years ago.

In view of the foregoing, the court concludes that Petitioner has failed to produce new

evidence that would prove his innocence of the crimes charged by clear and convincing

evidence.  The court therefore finds that Petitioner has failed to carry the burden of production of

evidence to satisfy the first requirement of section 2255(h).

**II.  Ineffective Assistance of Counsel – New Rule of Constitutional Law**

Petitioner also seeks to satisfy the pleading requirements of section 2255(h) by asserting

that there are now "new rule[s] of constitutional law, made retroactive to cases on collateral

review by the Supreme Court, that was previously unavailable."  The purported "new rules of

law" in question arise from Supreme Court decisions in Lafler v. Cooper, --- U.S. ---, 132 S.Ct.

1376 (2012) and Missouri v. Frye, --- U.S. ---,132 S.Ct. 1399 (2012).  These cases extended to

criminal defendants the protections of the Sixth Amendment right to effective assistance of

-12-

counsel to the part of the criminal proceeding pertaining to plea bargaining.

Petitioner's reliance on <u>Lafler</u> and <u>Frye</u> is unavailing for two reasons.  First, the Ninth Circuit Court of Appeals has determined that neither <u>Lafler</u> nor <u>Frye</u> established a new rule of constitutional law.  <u>See</u> <u>Buenrostro v. United States</u>, 697 F.3d 1137, 1140 (9th Cir. 2012) ("we join the Eleventh Circuit in concluding that neither case decided a new rule of constitutional law").  Second, even if these cases had announced a new rule of constitutional law, the constitutional principle established – that Petitioner had a right of effective assistance of counsel – would not avail Petitioner any relief since neither <u>Lafler</u> nor <u>Frye</u> altered the established *standard* used to analyze the Sixth Amendment right to effective assistance of counsel, they simply applied the existing standard to the plea bargaining process.  <u>Id.</u>  Petitioner's first 2255 Motion addressed precisely the same issue on the merits alleging essentially identical facts to support the claim.  Even if the court had jurisdiction to consider Petitioner's claim of ineffective assistance of counsel a second time, Petitioner has alleged no facts that would lead to a different outcome.

Based on the foregoing, the court concludes that Petitioner has failed to allege facts sufficient to satisfy either of the requirements of 28 U.S.C. § 2255(h).  Because Petitioner has not satisfied these requirements, section 2244(b)(4) requires that this court dismiss Petitioner's March 6 Motion.

THEREFORE, it is hereby ORDERED that Petitioner's second motion for relief pursuant to 28 U.S.C. § 2255 is DENIED.  This case remains closed.

IT IS SO ORDERED.

Dated:    August 28, 2015                          _____

SENIOR  DISTRICT  JUDGE